**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)  WILEY DON RIDENOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  CIV-15-734-F |
| | ) | |
| (1)  METLIFE INVESTORS USA | ) | |
| INSURANCE COMPANY and | ) | |
| (2)  METLIFE INSURANCE COMPANY | ) | |
| USA, | ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT**

Plaintiff, Wiley Don Ridenour, respectfully states his cause of action against

Defendants, MetLife Investors USA Insurance Company and MetLife Insurance Company

USA ("MetLife"), as follows:

**THE PARTIES**

1.      Plaintiff Wiley Don Ridenour is a citizen of the State of Oklahoma and

domiciled in Oklahoma City, Oklahoma County, Oklahoma.

2.      MetLife Investors USA Insurance Company is a Delaware corporation, and

its headquarters and its principal place of business are located in New York City, New

York as more fully described below.

3.      MetLife Insurance Company USA is also a Delaware corporation, and its

headquarters and its principal place of business are located in New York City, New York

as more fully described below.

## JURISDICTION AND VENUE

4.     This Court has diversity of citizenship jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(1).

5.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.     By way of example, the underlying life insurance contract at issue for the death benefits owed is in the amount of $125,000.00.

7.     This cause of action is between citizens of different States.

8.     MetLife is deemed to be a citizen of every State and foreign state by which it has been incorporated and the State or foreign state where it has its principal place of business. 28 U.S.C. § 1332(c).

9.     On information and belief, on November 14, 2014, the names of MetLife Investors USA Insurance Company and MetLife Investors Insurance Company (MetLife Investors) were changed to MetLife Insurance Company USA.  As a result, MetLife of Connecticut and MetLife Investors are no longer separate insurance companies, and all of their obligations have become obligations of MetLife Insurance Company USA.

10.     MetLife Investors USA Insurance Company was created, formed and incorporated under the laws of Delaware.  According to the most recent records of the Delaware Secretary of State, MetLife Investors USA Insurance Company was incorporated under the laws of Delaware on September 13, 1960.  Also according to the Delaware Secretary of State, MetLife Investors USA Insurance Company's registered agent for

2

service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, New Castle County, Delaware, 19801.

11.     MetLife Insurance Company USA was also created, formed and incorporated under the laws of Delaware.  According to the most recent records of the Delaware Secretary of State, MetLife Insurance Company USA was incorporated under the laws of Delaware on October 28, 2014.  Also according to the Delaware Secretary of State, MetLife Insurance Company USA's registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, New Castle County, Delaware, 19801.

12.     MetLife is licensed to do business in all fifty states, the District of Columbia, Puerto Rico, and the Virgin Islands.  On information and belief, MetLife is a domiciliary of, and has its principal place of business in the State of New York at 1095 Sixth Avenue, New York City, New York.

13.     Pursuant to United States Code, Title, 28, § 1332, MetLife is deemed a citizen of Delaware and New York and is not a citizen of Oklahoma.

14.     At the time of filing, Plaintiff Wiley Don Ridenour was a citizen of the State of Oklahoma and domiciled in Oklahoma City, Oklahoma County, Oklahoma.

15.     Accordingly, Plaintiff and MetLife are citizens of different states.

16.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of events or omissions giving rise to this claim occurred in Oklahoma City, Oklahoma County, Oklahoma and within this judicial district as follows:

a.  On or about November 12, 2012, Rebecca Lynne Ridenour made an offer to MetLife for life insurance in Oklahoma City, Oklahoma County, Oklahoma.

b.  On November 27, 2012, MetLife accepted Mrs. Ridenour's offer and issued a Term Life Insurance Policy, Policy Number 212 302 827 US (the "Policy"), to Mrs. Ridenour, deceased. (Ex. 4, MetLife Policy).

c.  Mrs. Ridenour, deceased, named her husband Mr. Ridenour as the beneficiary of her life insurance policy issued by MetLife.

d.  On July 15, 2013, MetLife sent Mr. Ridenour, to his Oklahoma City, Oklahoma County, Oklahoma address, a letter denying Mr. Ridenour's claim to the life insurance policy benefits.

17.  For purposes of 28 U.S.C. § 1391, Plaintiff Mr. Ridenour is a natural person and deemed to reside in the judicial district in which that person is domiciled, *to wit*, Oklahoma City, Oklahoma County, Oklahoma.

18.  For purposes of 28 U.S.C. § 1391, MetLife is deemed to be a resident within the Western District of Oklahoma because MetLife has sufficient contacts in said district to subject it to personal jurisdiction.

19.  Specifically, MetLife is licensed to do business, and actually conducts business, in the State of Oklahoma and within the Western District of Oklahoma.

20.  MetLife received a profit for the activities conducted in the State of Oklahoma and MetLife Purposefully availed itself to the privilege of conducting activities

within the State of Oklahoma and thus involve the benefits and protections of the laws of

the State of Oklahoma.

## STATEMENT OF FACTS

21.     On July 20, 2012, Mrs. Ridenour checked herself into Midwest Regional

Medical Center for abdominal pain.  During her one day stay, she received medication, a

CT scan, ultrasound and laboratory tests, and was discharged to home.

22.     On that day, the radiology report states a 12-mm nodule in the lower lobe of

her right lung and to "follow-up CT scan in 3 months can be considered."  (Ex. 1, July 20,

2012, Radiology Results, Midwest Regional Medical Center).

23.     In her discharge summary, Mrs. Ridenour was told to see her OBGYN

doctor:  "to follow-up with her physician:  Hawkins." (Ex. 2, July 20, 2012, Discharge

Summary, Midwest Regional Medical Center).

24.     July 23, 2012, three days after her hospital visit, Mrs. Ridenour saw her

OBGYN.

25.     Mrs. Ridenour's OBGYN talked with Mrs. Ridenour for approximately thirty

minutes to discuss she may be nearing menopause.

26.     During Mrs. Ridenour's visit with her doctor, Mrs. Ridenour was told that

the CT scan from July 20th "showed fibroid uterus but was otherwise unconcerning for

appendicitis or any acute issues."  (Ex. 3, July 23, 2012, Progress Notes, Dr. Angela

Hawkins, OBGYN).

27.     On November 12, 2012, Mrs. Ridenour requested a life insurance policy on MetLife's website (metlife.com):

a.     She filled out MetLife Application for Life Insurance and during that time, she had no knowledge, training, education, or experience in the medical or insurance field.

b.     She filled out her life insurance application based upon on her layperson interpretations of the information being requested of her.

c.     She was asked about her medical history in Section 1 of the Medical Questions.  She listed all of the diseases and illnesses her doctors told her, including seizures and depression/anxiety.

d.     She also checked "yes" that she had been in a "hospital or other facility" within the past five years and identified the facilities and the doctors, including she had radiology imaging in the last six month and which she recalled being an MRI.

28.     On November 27, 2012, MetLife  issued a Term Life Insurance Policy, Policy Number  212 302 827 US (the "Policy"), to Mrs. Ridenour, deceased.  (Ex. 4, MetLife Policy).

29.     Mr. Ridenour is the beneficiary of the Policy. *Id.*

30.     The policy was for $125,000.00, payable to Mr. Ridenour, for the covered death of Ms. Ridenour. *Id.*

31.     On November 28, 2012, Plaintiff's spouse died of probable status epilepticus with a "history of seizures."  (Ex. 5, Death Certificate).

32.     On January 18, 2013, MetLife learned that it's insured, Mrs. Ridenour had passed away when Mr. Ridenour, as the beneficiary, made  a  claim.

33.     MetLife asked Mr. Ridenour to sign a HIPPA Compliant Authorization so that MetLife could obtain Mrs. Ridenour medical records.

34.     Mr. Ridenour signed the HIPPA Authorization as requested.

35.     MetLife also requested that Mr. Ridenour sign an Affidavit of Surviving Spouse showing that he was Mrs. Ridenour's husband.

36.     Mr. Ridenour signed the affidavit as requested.

37.     April 15, 2013, Mr. Ridenour learned that MetLife was having difficulty of obtaining his wife's medical records:

> This email will supplement our telephone conversation of today regarding the outstanding medical records requested on the above claim.  You indicated you will contact them for the status of their release of records.

(Ex. 6, MetLife's email from Carole Mallard, Senior Claim Approver, April 15, 2013 and with Mr. Ridenour's hand-written notes).

38.     After the telephone conversation, Mr. Ridenour helped MetLife and called his wife's doctors and kept MetLife advised of the status of MetLife's request including, St. Anthony Hospital, Dr. Kristin Saunders, Surgery Center of Midwest City, Dr. Darius Noori, and Dr. Moe Mya. *Id.*

39.     MetLife sent a letter to Mr. Ridenour on May 13, 2013 that "we are having difficulties in obtaining medical records from Dr. Kristi Saunders and Dr. Robin Hall." (Ex. 7, May, 13, 2013 MetLife Letter).

40.     After the May 13, 2013 letter, Mr. Ridenour continued to help MetLife in their investigation.

41.     July 15, 2013, MetLife sent Mr. Ridenour a letter saying it was denying his claim and rescinding the Policy:

> We have learned, in addition to other relevant facts, that your wife was seen at Midwest Regional Medical Center on July 20, 2012.  The results of a CT Scan required further testing in 3 months.  This is serious from an underwriting standpoint.  If we had been aware of this information, which was material to our acceptable of the risk, her application would have been declined.

(Ex. 8, July 15, 2013 MetLife Letter).

42.     July 15, 2013, MetLife letter states, "Therefore, we are obliged to deny liability under this claim." *Id.*

43.     September 10, 2013, MetLife sent a letter to Mr. Ridenour for "further handling."  (Ex. 9, September 10, 2013 MetLife letter).

44.     September 10, 2013 letter enclosed the policy and Mrs. Ridenour's application, including the Medical Supplement with the application, and the letter states that in the Medical Supplement:

> Question 3(C) asks, "Other than as indicated above, has the Proposed Insured EVER had any disease or disorder of any of the Lung/Respiratory System?"
>
> The insured responded, "No".

*Id.*

45. Upon information and belief, Plaintiff alleges that MetLife had never interviewed or never spoke to any of Mrs. Ridenour's physicians during its investigation of her husband's claim.

46. At the time of her application for MetLife's life insurance policy, Mrs. Ridenour's primary care physicians, or any other of her physicians, had never mentioned to her verbally or in her medical records that she had a lung/respiratory disease or disorder.

47. The "Face Amount" and other benefits that the Policy provides:

**PAYMENT WHEN INSURED DIES**

a. **Policy Proceeds** - If the Insured dies while this policy is in force, amount of money, call the policy proceeds, will be payable to the beneficiary. The policy proceeds are the total of:

  * The Face Amount shown in the Policy Schedule;

      PLUS

  * Any part of a premium paid for coverage beyond the date of death;

      PLUS

  * Any amount of insurance on the Insured's life which may be provided by a rider on this policy;

      PLUS

  * Any premium due to the date of death.

> We will pay the policy proceeds to the beneficiary after the receipt of proof of death and a proper written claim. (See Payment provision in Payment of Benefits section).

**b.** **PAYMENT OF BENEFITS**

> **Payment** - Unless otherwise requested, we may pay the policy proceeds, when the insured dies, to the Payee in one sum or by placing the amount in an account that earns interest. …. The Company will pay interest on the proceeds from the date they become payable to the date of payment as stated above at the rate of interest that will be set each year by the Company. The interest rate will net be less than that required by the law in the state where this Policy is delivered or 1.5% per year, if greater.

(Ex. 4, MetLife's Policy).

## COUNT I - BREACH OF CONTRACT

48.     Plaintiff alleges and incorporates by reference herein, each of the statements and allegations made in the preceding paragraphs.

49.     On or about November 12, 2012, Rebecca Lynne Ridenour made an offer to MetLife for life insurance in Oklahoma City, Oklahoma County, Oklahoma.

50.     On November 27, 2012, MetLife accepted Mrs. Ridenour's, deceased, offer and issued a Term Life Insurance Policy, Policy number 212 302 827 US (the "Policy"), to Mrs. Ridenour, deceased. (Ex. 4, MetLife Policy).

51.     Mrs. Ridenour, deceased, gave $102.42 in exchange for MetLife's promise to pay $125,000.00 to her named beneficiary upon her death.

52.     Mrs. Ridenour, deceased, named her husband Mr. Ridenour as the beneficiary of her life insurance policy issued by MetLife.

53.     MetLife breached the contract by choosing to ignore its contractual obligations and do no investigation of Mr. Ridenour's claim, including whether Mrs. Ridenour intentionally deceived MetLife.

54.     MetLife breached the contract by choosing not to pay to Mrs. Ridenour's beneficiary, Mr. Ridenour, the policy benefits as promised.

55.     The conduct of MetLife, as described above, represents a material breach of the terms and conditions of the insurance contract between the parties.

56.     Plaintiff's has been damaged by virtue of this breach in amount in excess of $75,000.00.

## COUNT II - BAD FAITH

57.     Plaintiff alleges and incorporates by reference herein, each of the statements and allegations made in the preceding paragraphs.

58.     MetLife acted unfairly in one or more of the flowing ways:

a.      MetLife failed to conduct a reasonable and fair investigation to give the insured the benefit of the doubt.

b.      MetLife failed to properly investigate Mr. Ridenour's claim, including whether there was any intent by Mrs. Ridenour to deceive MetLife.

c.      MetLife did not deal fairly and in good faith with the Mr. Ridenour.

d.      MetLife knew that on November 12, 2012, Mrs. Ridenour applied for a life insurance policy on MetLife's website, and when Mr. Ridenour made a claim, MetLife preformed post-claim underwriting.

59.     MetLife was required under the insurance policy to pay Mr. Ridenour's claim.

60.     MetLife improperly rescinded the policy, knowing Mr. Ridenour's claim for benefits under the policy were valid.

61.     The violation by MetLife of its duty of good faith and fair dealing was the direct cause of the injury sustained by Mr. Ridenour.

62.     As a further direct and proximate result of the wrongful conduct of MetLife, Mr. Ridenour has suffered economically, has suffered anxiety, worry, embarrassment, mental and emotional distress, and other incidental damages exceeding $75,000.00.

63.     MetLife's conduct wrongfully denying Mr. Ridenour's claim was willful and intentional and evidences gross negligence and a reckless disregard for Mr. Ridenour's rights, entitling Mr. Ridenour to an award of exemplary or punitive damages exceeding $75,000.00 so as to punish Defendant and make an example of it to other insurance companies.

THEREFORE, Plaintiff respectfully prays that this court enter an order in judgment in its favor against Defendant MetLife Insurance Company USA in an amount in excess of $75,000.00, together with interest, costs, attorneys' fees, and all other relief to which they are entitled.

Respectfully submitted,

/s/ Michael Burrage
Michael Burrage, OBA #1350
Reggie N. Whitten, OBA #9576
John B. Norman, OBA#12805
Patricia Sawyer, OBA #30712
WHITTEN BURRAGE
1215 Classen Drive
Oklahoma City, OK 73103
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com
rwhitten@whittenburragelaw.com
jbnorman@whittenburragelaw.com
psawyer@whittenburragelaw.com

and

David Burrage, OBA #19422
BURRAGE LAW FIRM
1201 Westside Drive
P.O. Box 1727
Durant, OK 74702-1727
Telephone: (580) 920-0700
Facsimile: (580) 920-0702
davidburrage@burragelaw.com

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**